**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| Gentry Technology of S.C., Inc., | ) | Civil Action No. 1:14-cv-02127-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Baptist Health South Florida, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Gentry Technology of S.C., Inc. ("Plaintiff"), filed the instant action against Defendant Baptist Health South Florida, Inc. ("Defendant"), seeking to recover monetary damages based on state law claims for breach of contract, unjust enrichment, conversion, theft of services, fraudulent concealment, and civil conspiracy. (ECF No. 5.)

This matter is before the court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2) motion") and for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6) motion") or, in the alternative, Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion"). (ECF No. 7.) Additionally, Defendant has moved the court for an award of costs, including attorneys' fees, pursuant to Fed. R. Civ. P. 41(d). (ECF No. 15.) For the reasons set forth below, the court **DENIES** Defendant's Rule 12(b)(2) motion, **GRANTS IN PART AND DENIES IN PART** Defendant's Rule 12(b)(6) motion, **DENIES** Defendant's Rule 56 motion, and **DENIES** Defendant's Motion for Costs.

## I. RELEVANT BACKGROUND TO PENDING MOTIONS

The following relevant facts from the First Amended Complaint are taken as true only for

the purposes of the pending motions. On April 1, 2007, the parties entered into a contract[1] whereby Plaintiff agreed to provide a digital satellite distribution system ("DSDS") to Defendant at its facility in Miami, Florida. (ECF No. 5 at 2 ¶ 8.) The DSDS allowed Defendant to acquire, receive, and distribute programming services at its hospital facilities. (Id.) The agreement of the parties was for a three-year term, effective retroactively as of October 1, 2006, and allowed for renewal for three (3) successive three-year terms unless one of the parties provided written notice of termination ninety (90) days prior to the expiration of each term. (Id. at ¶ 10.) The contract was automatically renewed on October 1, 2009. (Id. at ¶ 12.) Plaintiff contends that the contract was materially breached by Defendant subsequent to its renewal. (Id. at 3 ¶ 20–4 ¶ 23.)

On May 20, 2011, Plaintiff filed a complaint in Gentry Tech. of S.C., Inc. v. Baptist Health S. Fla., Inc., C/A No. 1:11-cv-01232-JMC (D.S.C. May 20, 2011) ("Gentry 1"), alleging breach of contract (Count 1) and unjust enrichment (Count 2). (ECF No. 1 (C/A No. 1:11-cv-01232-JMC).) On March 13, 2012, the court denied Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer venue. (ECF Nos. 9, 17 (C/A No. 1:11-cv-01232-JMC).) Thereafter, on May 21, 2014, the court granted Defendant's motion to dismiss and dismissed Gentry 1 without prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (ECF Nos. 71, 91 (C/A No. 1:11-cv-01232-JMC).)

Plaintiff commenced the instant action on June 2, 2014, alleging breach of contract (Count 1) and unjust enrichment (Count 2).[2] (ECF No. 1 at 2–5.) Plaintiff filed a First Amended Complaint on June 4, 2014, which filing was permitted by Fed. R. Civ. P. 15(a)(1)(A). (ECF

_____

[1] The parties agreed to an amended contract on January 1, 2008. (ECF No. 5 at 2 ¶ 9.)

[2] The court notes that the Complaint in this action is identical to the Gentry 1 complaint. (See ECF No. 1; see also ECF No. 1 (C/A No. 1:11-cv-01232-JMC).)

No. 5.)  In the First Amended Complaint, Plaintiff alleged claims for breach of contract (Count 1); unjust enrichment, conversion, theft of services, and fraudulent concealment (Count 2); and civil conspiracy (Count 3).  (Id. at 2–8.)

On July 9, 2014, Defendant filed its Rule 12(b)(2) motion, Rule 12(b)(6) motion, and Rule 56 motion.  (ECF No. 7.)  Plaintiff filed opposition to Defendant's Motions to Dismiss or for Summary Judgment on July 28, 2014, to which Defendant filed a reply memorandum in support of its motions on August 7, 2014.  (ECF Nos. 9, 13.)

Thereafter, on August 25, 2014, Defendant filed its Motion for Costs.  (ECF No. 15.) Plaintiff filed opposition to Defendant's Motion for Costs on September 18, 2014, to which Defendant filed a reply memorandum in support of its Motion for Costs on September 29, 2014. (ECF Nos. 18, 19.)

## II.    LEGAL STANDARD

A.    Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), plaintiff has "the burden of proving" that jurisdiction exists "by a preponderance of the evidence."  In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).  "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'"  Id. (citation omitted); see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of jurisdiction when the court does not conduct an evidentiary hearing).  In deciding

whether plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment. Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A); ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997). "In order for a district court to validly assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied . . . [f]irst, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with the Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

South Carolina's long arm statute provides as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803 (2005). "South Carolina's long-arm statute has been interpreted to

reach the outer bounds permitted by the Due Process Clause." ESAB Grp., 126 F.3d at 623. Therefore, the appropriate question for the court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice.")).

Personal jurisdiction may arise through specific jurisdiction, based on the conduct alleged in the suit, or through general jurisdiction. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). Under general jurisdiction, a defendant's contacts/activities in the forum state are not the basis for the suit, but it may be sued in the court of the forum state "for any reason, regardless of where the relevant conduct occurred," because its activities in the forum state are "continuous and systematic." CFA Inst., 551 F.3d at 292 n.15. These activities must be "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co., 326 U.S. at 318. General jurisdiction is proper where the defendant has purposefully "availed himself of the privilege of conducting business [in the forum state]." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

Under specific jurisdiction, a defendant may be sued in this court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those

contacts were sufficient.  <u>See</u>, <u>e.g.</u>, <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984).  To determine whether specific jurisdiction exists, courts should examine "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  <u>ALS Scan, Inc.</u>, 293 F.3d at 712.

B.      <u>Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); <u>see also</u> <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief.  <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  <u>Ostrzenski v. Seigel</u>, 177 F.3d 245, 251 (4th Cir. 1999); <u>Mylan Labs., Inc.</u>, 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

C.     Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 56

A court may convert a motion to dismiss for failure to state a claim into a summary judgment proceeding in order to consider matters outside of the pleadings.[3]  Fed. R. Civ. P. 12(d); Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123–24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 252; Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute

---

[3] Materials—such as exhibits—are outside the pleadings if a complaint's factual allegations are not expressly linked to and dependent upon such matters.  Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).  However, "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and there was no authenticity challenge.  Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999).

be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

D.     Motions for Costs Pursuant to Fed. R. Civ. P. 41(d)

Fed. R. Civ. P. 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Id. Rule 41(d) is designed to prevent vexatious litigation and discourage forum shopping. Lawson v. Toney, 169 F. Supp. 2d 456, 466 (M.D.N.C. 2001). The decision to impose costs under Rule 41(d) is a matter of discretion with the court. Andrews v. America's Living Ctrs., LLC, No. 1:10cv257, 2011 WL 3359921, at *1 (W.D.N.C. Aug. 3, 2011); 9 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, Federal Practice and Procedure § 2375 (3d ed. 2008). A showing of bad faith is not required. Andrews, 2011 WL 3359921, at *1; Siepel v. Bank of Am., N.A., 239 F.R.D. 558, 563 (E.D. Mo. 2006).

## III.     ANALYSIS

A.     The Parties' Positions

*1.  Motion to Dismiss for Lack of Personal Jurisdiction*

In support of its Rule 12(b)(2) motion, Defendant argues that it "did not expressly aim its activities at South Carolina such as to subject it to personal jurisdiction in this state." (ECF No. 7-1 at 11.) Defendant further argues that its "connection with South Carolina is so tenuous that requiring it to defend this lawsuit in South Carolina would be inconsistent with the standards of

due process." (Id. at 12.) In support of these arguments, Defendant asserts that the court erred when it denied the Rule 12(b)(2) motion in <u>Gentry 1</u> because that decision relied on misrepresentations by Plaintiff and case law that "did not support a finding of minimum contacts or were clearly distinguishable from this case." (Id. at 14.)

Plaintiff opposes the Rule 12(b)(2) motion on the basis that the court has already addressed and rejected Defendant's personal jurisdiction arguments, and "there are no additional material facts since [the filing of] that Order." (ECF No. 9 at 1.) In this regard, Plaintiff asserts that the instant Rule 12(b)(2) motion should be denied because (1) the "exercise of personal jurisdiction over Defendant is authorized by the South Carolina long-arm statute" and (2) "Defendant's minimum contacts with South Carolina renders it subject to the personal jurisdiction of this Court in conformity with traditional notions of fair play and substantial justice." (Id. at 15–18.)

### 2. *Motion to Dismiss for Failure to State a Claim*

Even if the court has personal jurisdiction over it, Defendant argues that the court should grant the Rule 12(b)(6) motion because all of Plaintiff's causes of action "are barred by the statute of limitations and neither the tolling statutes[4], equitable tolling[5] nor equitable estoppel[6]

---

[4] Defendant identifies the tolling statutes as S.C. Code Ann. § 15-3-30 (2014) (stating exceptions to the running of the statute of limitations when the defendant is out of the state) and S.C. Code Ann. § 15-3-40 (2014) (providing exceptions for persons under a disability, including being underage or insane).

[5] Defendant contends that equitable tolling "applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." (ECF No. 7-1 at 26 (citing <u>Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.</u>, 687 S.E.2d 29, 32 (S.C. 2009) (citations omitted)).) Defendant argues extraordinary circumstances do not exist to allow equitable tolling because Plaintiff has known about the material facts of the matter since 2010. (Id.)

[6] Defendant asserts that equitable estoppel "applies when the statute of limitations has run and . . . the defendant is estopped from benefitting from the statute of limitations as a defense because the defendant has acted in such a manner as to induce the plaintiff to delay in timely filing a cause of action." (Id. (citing <u>Kelly v. Logan, Jolley, & Smith, L.L.P.</u>, 682 S.E.2d 1, 7 (S.C. Ct.

are available to save [Plaintiff] Gentry's claims." (ECF No. 7-1 at 18.) In support of this argument, Defendant asserts that "South Carolina's statute of limitations applies to all of [Plaintiff] Gentry's claims presented in the instant Complaint" and the statute of limitations for each of Plaintiff's claims is three (3) years. (Id. at 19 (citing S.C. Code Ann. §§ 15-3-530(1), 530(5) (2014) ("Within three years: (1) an action upon a contract, obligation, or liability, express or implied, . . . (5) an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law, . . . ."))) . Moreover, Defendant asserts that neither the discovery rule nor the court's dismissal of Gentry 1 preclude application of the statute of limitations to Plaintiff's claims. (Id. at 19–20 (citing Davis v. Lunceford, 335 S.E. 2d 798, 799 (S.C. 1985) ("When an action is dismissed without prejudice, the statute of limitations will bar another suit if the statute has run in the interim.")).)

In accordance with the foregoing, Defendant contends that Plaintiff was on notice that it had claims for (1) breach of contract and theft of services on July 10, 2010; (2) unjust enrichment on May 20, 2011; and (3) conversion, fraudulent concealment, and civil conspiracy on September 22, 2010. (Id. at 20–25.) In this regard, because this lawsuit was not filed until June 2, 2014, Defendant contends that all of Plaintiff's claims are barred by the applicable three-year statute of limitations. (Id.)

In response to Defendant's arguments in support of its Rule 12(b)(6) motion, Plaintiff asserts that the court should disregard Defendant's contentions because the statute of limitations is an affirmative defense that "cannot be established in a motion to dismiss." (ECF No. 9 at 19 (citing Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)

---

App. 2009) (internal citations omitted)).) Defendant argues that equitable estoppel is inapplicable because Plaintiff has known about the material facts of the matter since 2010. (Id. at 28.)

("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses.")).) In addition, Plaintiff asserts that it alleges tortious conduct in the First Amended Complaint that occurred in Florida and, therefore, "Florida law may govern one or more of the claims in this case." (<u>Id.</u> at 21.) Moreover, because the court's choice of law determination would include the statute of limitations as a substantive element of the law being applied, Plaintiff asserts that its claims would be timely filed if the court applies the relevant statutes of limitations of Florida. (<u>Id.</u> at 23–24.) Specifically, Plaintiff asserts that its claims are timely under Florida law since a five-year limitations period applies to "legal or equitable action on a contract, obligation, or liability founded on a written instrument," and a four-year limitations period is applicable to an "action for taking, detaining, or injuring personal property [or] to recover specific personal property [or a] legal or equitable action founded on fraud [or, a]ny action not specifically provided for in these statutes." (<u>Id.</u> at 24–25 (citing Fla. Stat. §§ 95.11(2)(b), (3)(h), (3)(i), (3)(j), and (3)(p) (2014)).)

Plaintiff also argues that even if South Carolina's statutes of limitations should be applied to its claims, Defendant waived its application by failing "to move the court [in <u>Gentry 1</u>] to dismiss [the case] with prejudice" or by not protesting when its motion to dismiss was granted without prejudice, since Defendant's position is that the statute of limitations ran before <u>Gentry 1</u> was dismissed. (<u>Id.</u> at 26.) Alternatively, Plaintiff argues that the statute of limitations should be equitably tolled because it refiled the action with diligence and Defendant cannot claim that it was without timely notice of Plaintiff's claims or suffered prejudice. (<u>Id.</u> at 27 (citing <u>Aikens v. Ingram</u>, 524 F. App'x 873, 882–83 (4th Cir. 2013) ("Under that [equitable tolling] test, . . . we must consider whether defendants . . . received timely notice of [the] . . . claims, whether the defendants have been prejudiced by delay of the litigation, and whether [the party] . . . has acted

with diligence.) (citing <u>Burnett v. N.Y. Cent. R.R. Co.</u>, 380 U.S. 424, 429–30 (1965)).

   *3.  Motion for Summary Judgment*

   Defendant moves for summary judgment as an alternative to its Motions to Dismiss to account for documents that were filed as attachments in support of the Rule 12(b)(6) motion. (ECF No. 7-1 at 1 n.1 (citing Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."))).)   More specifically, Defendant requested as part of its Rule 56 motion that the court take judicial notice of the following documents:   (1) the complaint filed in <u>Gentry 1</u>; (2) Plaintiff's interrogatory responses from <u>Gentry 1</u>; (3) deposition excerpts from <u>Gentry 1</u>; and the complaint filed in <u>Gentry Tech. of S.C., Inc. v. Baptist Health S. Fla., Inc.</u>, Case No. 10-43183 CA 31 (Cir. Ct. MD Cnty. Fla. Aug. 6, 2010) (the "Florida case"), a similar case involving the parties which Plaintiff filed in the Circuit Court for Miami-Dade County, Florida.  (ECF No. 7-1 at 2 (referencing ECF Nos. 7-3, 7-4, 7-5, 7-6).)

   Plaintiff opposes the court converting the Rule 12(b)(6) motion into a Rule 56 motion on the basis that it has not had the opportunity to conduct discovery on the documents attached to the Motion to Dismiss and "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  (ECF No. 9 at 20 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.5 (1986)).)  Therefore, Plaintiff requests the opportunity to conduct discovery "to present facts essential to justify its opposition to summary judgment."  (<u>Id.</u> at 21.)

   Additionally, Plaintiff opposes the court taking judicial notice of deposition excerpts and partial discovery submitted by Defendant from <u>Gentry 1</u>.  Plaintiff asserts that Defendant should

not be allowed to use these documents to establish dates for the statute of limitations when there are other underlying documents in Defendant's possession that have not been produced and "which can verify or dispute these dates." (Id.)

### 4. *Motion for Costs*

In its Motion for Costs, Defendant contends that this matter should be stayed until Plaintiff pays it $25,419.94 in costs and $142,555.00 in attorneys' fees (a total of $167,974.94) to account for the court's dismissal of Gentry 1 and Plaintiff's dismissal of the Florida case. (ECF No. 15 at 3.)  Defendant contends that "to deter forum shopping and vexatious litigation," which clearly exist in this matter, "Rule 41(d) gives the Court discretion to award to a defendant all or part of the costs [including attorneys' fees] of the previous action and to stay the new case until that payment has been made." (Id. at 4 (citations omitted).)  Defendant further contends that Rule 41 applies to both voluntary and involuntary dismissals and the court has discretion to tax the awarded costs to the party and/or its attorney. (Id. at 5–6 (citing, e.g., Zaegel v. Pub. Fin. Co., 79 F.R.D. 58, 59 (E.D. Mo. 1978) ("While . . . [Fed. R. Civ. P. 41(d)] generally applies to actions voluntarily dismissed by the plaintiff, there is no bar to the rule being invoked where the dismissal is involuntary.")).)

Plaintiff asserts that Defendant's Motion for Costs should be denied because there is no evidence that Plaintiff pursued this action, Gentry 1, or the Florida case in bad faith or for the purpose of harassment or intimidation. (ECF No. 18 at 20.)  Moreover, Plaintiff asserts that its conduct is not "anywhere close to the conduct in cases w[h]ere Rule 41(d) sanction[s] have been imposed." (Id.)

### B.    The Court's Ruling

In light of the foregoing authorities and the parties' respective positions, the court

considers the merits of each of Defendant's motions in turn below.

      *1. Motion to Dismiss for Lack of Personal Jurisdiction*

In <u>Gentry 1</u>, the court found its assertion of personal jurisdiction over Defendant was supported by South Carolina's long arm statute and did not violate due process. (ECF No. 17 (C/A No. 1:11-cv-01232-JMC).) Plaintiff argues that "Defendant should be collaterally estopped from relitigating the issue of personal jurisdiction, or in the alternative, this Court should adopt the Orders in the prior action as the issues are identical and there has been no material change in the facts." (ECF No. 9 at 13.) Defendant opposes Plaintiff's collateral estoppel argument asserting that the court's <u>Gentry 1</u> decision on personal jurisdiction is void and not binding in this case because the court "lacked subject-matter jurisdiction from the case's inception, as there was no diversity of citizenship" between Plaintiff and Defendant. (ECF No. 13 at 2 (citing <u>Wendt v. Leonard</u>, 431 F.3d 410, 412 (4th Cir. 2005) ("An order is void for purposes of Rule 60(b)(4) only if the court rendering the decision lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process of law") (citation omitted)).)

For collateral estoppel to apply to the issue of personal jurisdiction relevant to the merits of Defendant's Rule 12(b)(2) motion, Plaintiff must establish "(1) that 'the issue sought to be precluded is identical to the one previously litigated' ('element one'); (2) that the issue was actually determined in the prior proceeding ('element two'); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' ('element three'); (4) that the prior judgment is final and valid ('element four'); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' ('element five')." <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 217 (4th Cir. 2006) (quoting <u>Sedlack v. Braswell Servs. Group, Inc.</u>, 134 F.3d 219, 224 (4th Cir. 1998)). Here, the

court finds that collateral estoppel is inapplicable because the personal jurisdiction order in Gentry 1 cannot be considered valid since the court did not have subject matter jurisdiction over the action. The court makes this finding as to element four based on the Fourth Circuit's recognition that "any action by a court without subject-matter jurisdiction is 'ultra vires' and therefore void." U.S. v. Hartwell, 448 F.3d 707, 715 (4th Cir. 2006) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 101–02 (1998))). Therefore, Defendant is correct in its assertion that the finding of personal jurisdiction over it in Gentry 1 is not binding in this case.

Because the Gentry 1 decision is inapplicable to the instant personal jurisdiction issue, the court is required to address Defendant's personal jurisdiction challenge. Initially, the court notes that the record supports finding that Defendant was not engaged in "continuous and systematic" activities in South Carolina such as to subject it to general jurisdiction in this state. Therefore, the court can only have jurisdiction over Defendant if its contacts were sufficient to subject it to specific jurisdiction in South Carolina.

In the Declaration of David R. Friedman ("Friedman"), Defendant's Corporate Vice President and General Counsel, Defendant attempts to establish why the court should find that it did not purposefully avail itself of the privilege of conducting activities in South Carolina. Specifically, Friedman declared that Defendant's principal place of business and main corporate office is in Coral Gables, Florida. (ECF No. 7-2 at 2 ¶¶ 3, 4.) He declared that Defendant stores paper copies of records in Florida and employs most of its employees in a South Florida location. (Id. at ¶ 4.) Friedman further declared that Defendant does not have any "business operations in the State of South Carolina - - it has no offices, [records], employees, representatives or agents within South Carolina" and has never been "authorized, licensed, or registered to do business in

South Carolina." (Id. at 2 ¶¶ 4–5, 3 ¶ 6.) He also declared that Defendant does not pay taxes or own real estate, bank accounts, or assets in South Carolina. (Id. at 3 ¶¶ 6–7.)

As to the specifics of its relationship with Plaintiff, Defendant asserts that the contract between the parties was for the provision of services in Miami, Florida, and did not provide that South Carolina law would govern the disputes between the parties. (Id. at ¶ 9; see also ECF 7-1 at 12.) Defendant further asserts that it did not make any in-person contact with Plaintiff in South Carolina regarding their business relationship. (ECF No. 7-1 at 12.) Defendant contends its only connection to South Carolina is that "it is a participant in a risk retention group based in South Carolina that provides malpractice insurance to [Defendant] Baptist physicians, all of whom practice in South Florida." (ECF No. 7-2 at 3 ¶ 8.)

To show that Defendant has sufficient minimum contacts with South Carolina, Plaintiff submits the Affidavit of Robert Taylor, Plaintiff's corporate officer. Taylor stated that while he was in South Carolina, he was contacted by Defendant's representative to determine whether Plaintiff "was interested in designing, engineering, and installing TV cable systems for certain Baptist facilities." (ECF No. 9-1 at 2 ¶ 4.) Once the parties reached an agreement, Taylor declared that Plaintiff performed in South Carolina everything required of it under its contract with Defendant. (Id. at 3 ¶ 5.) Taylor further declared that Defendant knew services for it were being performed in South Carolina because it sent "numerous documents and other correspondence to [Plaintiff] Gentry's office as part of not only the contract negotiations, but also as part of the design, engineering, and programming aspect of developing the digital TV systems." (Id.) Taylor also stated that Defendant sent Plaintiff "in South Carolina purchase orders specifying the products and services [Defendant] Baptist desired" and large volumes of other documents, such as budgets, lists of desired channels, charts, and other communications.

(Id. at 3 ¶ 7, 5–6 ¶ 14.)  In addition, Defendant submitted payments on Plaintiff's invoices to its Aiken, South Carolina, location.  (Id. at 5 ¶ 10.)  Finally, Taylor stated that Defendant's representatives telephoned him "in South Carolina regularly."  (Id. at ¶ 14.)

After careful consideration of the facts presented by the parties, the court concludes that Defendant "purposefully established minimum contacts within the forum" of South Carolina. Burger King, 471 U.S. at 479; see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 294–97 (4th Cir. 2009) (finding personal jurisdiction where foreign defendant (1) reached into the forum state to initiate business with plaintiff, (2) corresponded and collaborated with plaintiff over an extended period, and (3) made in-person contact with plaintiff twice); Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc., 966 F. Supp. 2d 604, 613 (D.S.C. 2013) ("Alpert reached into South Carolina to initiate the business relationship in general and specifically to solicit Ameristone's participation in the Lowe's program; he made in person contact with Campbell at least once to discuss the business relationship; he maintained almost daily communication with Campbell, who was located in South Carolina, regarding the relationship and the Lowe's program; and he knew Ameristone was to perform its contractual duties mainly in South Carolina. Under these facts, the Court concludes that Alpert 'purposefully established minimum contacts within the forum.'") (Citations omitted.).  The court further concludes that Plaintiff's claims arose out of Defendant's activities directed at the state.

As a result of Defendant having the requisite contacts with South Carolina as set forth above, the court must now consider whether the exercise of jurisdiction "would comport with 'fair play and substantial justice.'"  Burger King, 471 U.S. at 476 (citing Int'l Shoe Co., 326 U.S. at 320).  In weighing whether the exercise of jurisdiction comports with fair play and substantial justice, the court considers the following factors: (1) the burden on Defendant of litigating in

South Carolina; (2) the interest of South Carolina in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering social policies. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009). Although Defendant faces some burdens in defending against Plaintiff's claims in South Carolina, those burdens neither offend the traditional notions of fair play and substantial justice, nor put Defendant at a severe disadvantage. In addition, South Carolina has an interest in the resolution of a lawsuit filed by one of its citizens. As a result, the court finds that the exercise of personal jurisdiction over Defendant would not be constitutionally unreasonable. Accordingly, the court finds that Plaintiff has met its burden of proving that this court has personal jurisdiction over Defendant.

Based on the aforementioned record, the court finds that Plaintiff can establish a prima facie case of personal jurisdiction over Defendant. Accordingly, the court denies Defendant's Rule 12(b)(2) motion as to the First Amended Complaint.

### 2. *Motion to Dismiss for Failure to State a Claim*

Because the court finds that personal jurisdiction over Defendant is present in this action, the court must address whether the First Amended Complaint should be dismissed as against Defendant pursuant to Fed. R. Civ. P. 12(b)(6). At the outset, after reviewing the First Amended Complaint, pertinent law, and the arguments of the parties, the court must dismiss Plaintiff's claims for theft of services and fraudulent concealment. The court finds that there is not an independent civil cause of action for theft of services[7] under either South Carolina or Florida

---

[7] The court has determined that theft of services is usually defined as a criminal act. See, e.g., 18 Pa. Cons. Stat. Ann. § 3926(a)(1) (2014) ("A person is guilty of theft if he intentionally obtains services for himself or for another which he knows are available only for compensation, by

law.[8]  As a result, the court dismisses Plaintiff's claim for theft of services pursuant to Fed. R. Civ. P. 12(b)(6).

The court also observes that a claim for fraudulent concealment is not a viable civil claim in South Carolina.[9]  However, such a claim, exists in Florida[10], but is subject to the specificity requirements of Fed. R. Civ. P. 9(b).  In this regard, Plaintiff alleges the following in the First Amended Complaint to establish his fraudulent concealment claim:

> Defendant materially breached the Agreement by: a. Contracting with one or more third parties for services and other matters which GTSC had the exclusive right to provide pursuant to the Agreement; b. Wrongfully terminating GTSC's agreement without proper notice or legal cause; c. Receiving digital satellite and cable services without proper payment therefore; and d. Otherwise failing to comply with the terms set forth in the Agreement.

---

deception or threat, by altering or tampering with the public utility meter or measuring device by which such services are delivered or by causing or permitting such altering or tampering, by making or maintaining any unauthorized connection, whether physically, electrically or inductively, to a distribution or transmission line, by attaching or maintaining the attachment of any unauthorized device to any cable, wire or other component of an electric, telephone or cable television system or to a television receiving set connected to a cable television system, by making or maintaining any unauthorized modification or alteration to any device installed by a cable television system, or by false token or other trick or artifice to avoid payment for the service.")  In consideration of the foregoing, the court finds that the theft of services allegations are subsumed in the claims for unjust enrichment and/or conversion.

[8] Plaintiff fails to allege which state's law is applicable to the claims asserted in this action.

[9] Like the discovery rule, "fraudulent concealment constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the concealment by the owner of the cause of action."  In re Building Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig., MDL No. 8:11-mn-02000-JMC, C/A No. 8:11-cv-02785-JMC, 2013 WL 139520, at *10 (D.S.C. Jan. 10, 2013) (citation omitted).

[10] "The elements of a claim for fraudulent concealment under Florida law are: (1) a misrepresentation of material fact or suppression of the truth; (2)[a] knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either the truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation."  Greenberg v. Miami Children's Hosp. Research Inst., Inc., 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (citing Jones v. Gen. Motors Corp., 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998)).

Defendant fraudulently concealed the foregoing breaches not only by failing to inform GTSC of its actions but also by actively preventing GTSC from discovering such breaches including, inter alia, changing the user name and password on accounts GTSC managed pursuant to the Agreement and preventing GTSC from accessing Defendant's premises. Defendant knew that its concealment of the foregoing breaches would induce GTSC to continue to provide equipment and services to Defendant at GTSC's expense. GTSC detrimentally relied on Defendant's misrepresentations including but not limited to by providing equipment and services to Defendant for which GTSC was never properly paid.

Defendant's conversion and improper use of GTSC's property was willfully and fraudulently concealed from Plaintiff that it had caused, or allowed to cause, the conversion and improper use of equipment and signals by physical concealment of its actions and by denial of such actions.

Defendant fraudulently concealed the conversion not only by failing to inform GTSC of its actions but also by actively preventing GTSC from discovering such conversion including, inter alia, changing the user name and password on accounts GTSC managed pursuant to the Agreement and preventing GTSC from accessing Defendant's premises. Defendant knew that its concealment of the conversion would induce GTSC to continue to provide equipment and services to Defendant at GTSC's expense. GTSC detrimentally relied on Defendant's misrepresentations including but not limited to by providing equipment and services to Defendant for which GTSC was never properly paid.

(ECF No. 5 at 4 ¶¶ 23, 25; 5 ¶¶ 34, 36.)

Upon review, the court finds that Plaintiff's allegations do not satisfy the pleading requirements as to the requisite level of specificity required by Rule 9(b). See Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) ("To satisfy the requirements of Rule 9(b), the complaint must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."). Therefore, the court dismisses Plaintiff's claim for fraudulent concealment pursuant to Fed. R. Civ. P. 12(b)(6).

As to the remaining claims for breach of contract, unjust enrichment, conversion, and civil conspiracy, Defendant asserts that these causes of action are barred by South Carolina's applicable three-year statute of limitations. (ECF No. 7-1 at 19.) Because Plaintiff alleges that subject matter jurisdiction exists over this matter pursuant to 28 U.S.C. § 1332 (ECF No. 5 at 1 ¶ 4), the court agrees with Defendant that the statute of limitations of South Carolina, and not Florida, is controlling in this analysis of whether Plaintiff is barred from proceeding with its claims. See, e.g., Fiberlink Commc'ns Corp. v. Magarity, 24 F. App'x 178, 181 (4th Cir. 2001) ("When exercising jurisdiction over claims arising under state law, federal courts look to the law of the forum state to determine the applicable statute of limitations.") (citing Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 110 (1945)); Coe v. Thermasol, Ltd., 785 F.2d 511, 514 n.5 (4th Cir. 1986) ("[F]ederal courts sitting in diversity apply the forum state's statute of limitations.") (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). Under South Carolina law, the limitations period for all of Plaintiff's causes of action is three (3) years. S.C. Code Ann. §§ 15-3-530(1), 530(5) (2014). These statutes of limitations are modified by the "discovery rule" wherein "the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." True v. Monteith, 489 S.E.2d 615, 616 (S.C. 1997).

The date on which a plaintiff should have discovered his cause or causes of action is an objective question. Graham v. Welch, Roberts & Amburn, LLP, 743 S.E.2d 860, 862 (S.C. Ct. App. 2013). A reviewing court "must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." Bayle v. S.C. Dep't of Transp., 542 S.E.2d 736, 740 (S.C. Ct. App. 2001) (internal citations omitted). "If there is conflicting

evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury." <u>Manios v. Nelson, Mullins, Riley & Scarborough, LLP</u>, 697 S.E.2d 644, 654 (S.C. Ct. App. 2010); <u>see also</u> <u>Maher v. Tietex Corp.</u>, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998) ("The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action.") (Citation omitted). However, the statute of limitations is an affirmative defense that can only be raised in a Rule 12(b)(6) motion when "it clearly appears on the face of the complaint." <u>Richmond</u>, 4 F.3d at 250.

Defendant's Rule 12(b)(6) motion requires the court to determine when Plaintiff knew or reasonably should have learned of facts that would have given it an indication of its causes of action against Defendant. In the First Amended Complaint, Plaintiff alleged (1) as part of its breach of contract claim that it sent Defendant correspondence on June 25, 2010, regarding the "material breach of the Exclusivity Provision for engaging the services of vendors other than" Plaintiff (ECF No. 5 at 3 ¶ 21); and (2) in support of its claim for conversion that it demanded on September 22, 2010, that Defendant return its property, which Defendant refused to return said property (<u>Id.</u> at 6 ¶ 32). Upon review of these allegations, the court is persuaded that "a person of common knowledge and experience" would perceive that he had been injured on the specific dates alleged in the First Amended Complaint. In this regard, the court concludes that Plaintiff's claim for breach of contract had accrued by June 25, 2010, and its claims for conversion had accrued by September 22, 2010. Therefore, these claims are time-barred unless Plaintiff can persuade the court that the statute of limitations should be equitably tolled or has been waived by Defendant.

Equitable tolling "is generally applied only where the defendant's actions hinder the plaintiff's discovery of or ability to pursue the claim" and "should be used sparingly and only

when the interests of justice compel its use." Wellin v. Wellin, No. 2:13-cv-1831-DCN, 2014 WL 234216, at *4 (D.S.C. Jan. 22, 2014) (citations omitted). Under South Carolina law, "[a] waiver is a voluntary and intentional abandonment or relinquishment of a known right." PCS Nitrogen, Inc. v. Ross Dev. Corp., No. 2:09-cv-03171-MBS, 2015 WL 627995, at *18 (Feb. 12, 2015) (citation omitted). In this matter, the record does not demonstrate either a voluntary waiver by Defendant of its statute of limitations affirmative defense or conduct by Defendant requiring the court to equitably toll the statute of limitations. As a result, the court finds that Plaintiff's claims for breach of contract and conversion are barred by the three-year statute of limitations because Plaintiff did not file this lawsuit until June 4, 2014, or more than three (3) years after the accrual of the claims. Therefore, the court grants Defendant's Rule 12(b)(6) motion as to these claims.

However, the court denies the Rule 12(b)(6) motion as to Plaintiff's claims for unjust enrichment and civil conspiracy. If the court draws all reasonable factual inferences from the First Amended Complaint's facts in Plaintiff's favor as it is required to do under Fed. R. Civ. P. 12(b)(6), the allegations do not establish when Plaintiff knew or should have known it had an unjust enrichment and/or civil conspiracy claim against Defendant. Manios v. Nelson, Mullins, Riley & Scarborough, LLP, 697 S.E.2d 644, 654 (S.C. Ct. App. 2010) ("If there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury."); see also Maher v. Tietex Corp., 500 S.E.2d 204, 207 (S.C. Ct. App. 1998) ("The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action.") (Citation omitted). Accordingly, the court denies Defendant's Rule 12(b)(6) motion as to Plaintiff's claims for unjust enrichment and civil conspiracy.

### 3. Motion for Summary Judgment

Given the early stage of this litigation, the court declines to convert the Rule 12(b)(6) motion to a Rule 56 motion by considering the additional documentation submitted by Defendant in support of its statute of limitations arguments as to Plaintiff's claims for unjust enrichment and civil conspiracy. Therefore, the court denies without prejudice Defendant's alternative Motion for Summary Judgment.

### 4. Motion for Costs

Defendant moves the court to award costs including attorneys' fees in the amount of $167,974.94 for defending Gentry 1 and the Florida case. Upon review, the court does not ascertain that Plaintiff dismissed the Florida case in order to forum shop or gain a tactical advantage. Moreover, after the court dismissed Gentry 1, Plaintiff refiled the current lawsuit after adding and amending the claims in an attempt to strengthen the case. Therefore, the court finds that Plaintiff was not attempting to engage in "vexatious litigation" such that an award of costs would be appropriate under Rule 41(d). Accordingly, the court in its discretion will not award Defendant costs and its motion pursuant to Fed. R. Civ. P. 41(d) is denied.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss the First Amended Complaint for failure to state a claim and dismisses Plaintiff's claims for breach of contract, conversion, theft of services, and fraudulent concealment pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 7.) The court **DENIES** without prejudice Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, and Defendant's Motion for Costs pursuant to Fed. R.

Civ. P. 41(d).  (ECF Nos. 7, 15.)  The parties will proceed to discovery on Plaintiff's remaining

claims for unjust enrichment and civil conspiracy.

**IT IS SO ORDERED.**

United States District Court Judge

March 17, 2015
Columbia, South Carolina